**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| THE SPYGLASS GROUP, LLC, | Case No. 1:22-cv-00131 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | |
| GENESIS HEALTH CLUBS MANAGEMENT, INC., *et al.*, | |
| Defendants. | |

# OPINION AND ORDER

Plaintiff The SpyGlass Group, LLC, an Ohio limited liability company, agreed to perform certain audit services for Defendants Genesis Health Clubs Management, Inc. and Genesis Health Clubs Management, LLC, each of which is a Kansas company, to identify various cost savings. Plaintiff filed suit alleging that Defendants failed to pay according to their contract. The merits of that dispute are for another day. At the pleading stage, the record shows that the parties never met in person and conducted all business virtually from their respective locations in Ohio and Kansas. Under Rule 12(b)(2), Defendants move to dismiss for lack of personal jurisdiction. ([ECF No. 24](#).)

**FACTUAL BACKGROUND**

On this motion to dismiss, the Court takes the following allegations in the first amended complaint as true and construes them in Plaintiff's favor.

### A.     First Amended Complaint

The SpyGlass Group, LLC audits businesses' telecommunications service accounts, including voice, data, internet, cloud service, and mobility/cellular accounts, and recommends cost reductions and other savings. (ECF No. 15, ¶ 4, PageID #81–82.) Genesis Health Clubs Management, Inc. and Genesis Health Clubs Management, LLC operate health clubs and gyms in the States of Kansas, Nebraska, Colorado, Iowa, Oklahoma, and Missouri. (*Id.*, ¶¶ 7–8, PageID #82.)

#### A.1.     The SpyGlass SnapShot Audit

SpyGlass uses its "SnapShot Audit" technology expense management tool to analyze a client's current technology spending and identify opportunities for potential savings. (ECF No. 15, ¶ 16, PageID #84.) SpyGlass reviews two months of a client's bills, then meets with the company to discuss the SnapShot Audit's findings and recommend potential savings based on the client's particular business needs. (*Id.*, ¶¶ 17–18.) SpyGlass bills companies for its services based on verified savings from the audit. (*Id.*, ¶ 19.)

#### A.2.     SpyGlass and Genesis Health Clubs

In September 2020, a SpyGlass employee based in Ohio contacted Genesis Health Clubs to offer SpyGlass' services. (*Id.*, ¶ 20.) Genesis Health Clubs agreed to a Zoom meeting with a SpyGlass sales representative, who explained the audit process and the potential for cost reductions. (*Id.*, ¶ 21, PageID #84–85.) A few months later, SpyGlass and Genesis Health Clubs entered into a contract for SpyGlass to conduct a SnapShot Audit of Genesis Health Clubs' telecommunication expenses. (*Id.*, ¶ 22, PageID #85; ECF No. 15-1.) To execute the contract, SpyGlass

sent Genesis Health Clubs an agreement, which Genesis Health Clubs signed electronically and returned electronically to SpyGlass in Ohio. (ECF No. 15, ¶ 22, PageID #85.)

The SnapShot Audit Agreement between the parties is a one-page document. (ECF No. 15-1, PageID #92.) The parties agreed to a kickoff meeting and a meeting at the end of the project for SpyGlass to summarize its findings. (*Id.*) However, it does not indicate where either meeting will take place. Kansas law governs the contract. (*Id.*) Also, it allows the parties to sign electronically, and the face of the document shows that they did. (*Id.*)

In January 2021, SpyGlass hosted a kick-off meeting with Genesis Health Clubs via Zoom, in which SpyGlass explained the audit process. (ECF No. 15, ¶¶ 24–25, PageID #85.) A month later, Genesis Health Clubs uploaded its bills and invoices to SpyGlass for review in Ohio through SpyGlass' electronic portal, which is housed in Ohio. (*Id.*, ¶ 27, PageID #86.) Between January 2021 and May 2021, Genesis Health Clubs supplied SpyGlass in Ohio with the necessary materials and authority to complete the audit and communicated with SpyGlass in Ohio. (*Id.*, ¶¶ 23 & 26, PageID #85.)

During a videoconference in May 2021, SpyGlass presented its audit findings and made recommendations to Genesis Health Clubs based on the audit. (*Id.*, ¶ 30, PageID #86.) Then, the parties made a list of action items for SpyGlass to perform based on the recommendations. (*Id.*; *see also id.* ¶ 31.)

A few weeks later, the parties participated in a follow-up Zoom meeting in which they agreed on a strategy for SpyGlass to implement its recommendations. (*Id.*, ¶ 33, PageID #87; ECF No. 15-3.) With authority from Genesis Health Clubs, SpyGlass communicated from its offices in Ohio with Genesis Health Clubs' service providers to implement the recommendations. (ECF No. 15, ¶ 32, PageID #86.) These changes allegedly saved Genesis Health Clubs over $7,3800 per month. (*Id.*, ¶ 36, PageID #87.) SpyGlass billed Genesis Health Clubs about $88,000 for its services. (*Id.*, ¶ 45; ECF No. 15-4.)

### A.3. The Dispute

On two separate occasions in June 2021, a SpyGlass representative emailed Genesis Health Clubs requesting a meeting to provide an update on the project along with possible opportunities to save additional money. (ECF No. 15, ¶¶ 43–44, PageID #88.) Soon after sending the invoice, a representative from Genesis Health Clubs informed SpyGlass that its point-of-contact had changed and requested that SpyGlass resend the invoice. (*Id.*, ¶ 46, PageID #88.)

A representative from Genesis Health Clubs then informed SpyGlass that the owner of Genesis Health Clubs was unhappy with the amount invoiced and that Genesis Health Clubs would likely cancel SpyGlass' services. (*Id.*, ¶ 47.) SpyGlass made several attempts to reach Genesis Health Clubs' point-of-contact regarding the unpaid invoice, to no avail. (*Id.*, ¶¶ 49–50, PageID #88–89.) SpyGlass alleges that Genesis Health Clubs has yet to pay for the services it performed. (*Id.*, ¶ 51, PageID #89.) Plaintiff asserts three claims: (1) breach of contract (Count I), (2) quantum

meruit (Count II), and (3) unjust enrichment (Count III). (*Id.* ¶¶ 52–70, PageID #89–91.)

B.  **Declarations**

With respect to personal jurisdiction, the amended complaint shows that SpyGlass and Genesis Health Clubs never met in person. Neither traveled to the location of the other. Instead, the parties conducted business remotely by email, Zoom or videoconference, and exchanged information through various technology tools. Additionally, construing the record in Plaintiff's favor, as the Court must in the present procedural posture, Genesis Health Clubs knew that SpyGlass conducted its business from Ohio and that it delivered documents and other information to SpyGlass in Ohio to perform that work. (*Id.*, ¶¶ 24 & 32, PageID #85 & #86.)

Each party submitted declarations setting forth additional facts. For Genesis Health Clubs, Rodney L. Steven II, the company's president, declares that Genesis Health Clubs Management, Inc. is a Kansas corporation headquartered in Kansas, while Genesis Health Clubs Management, LLC is a limited liability company headquartered in Kansas where each of its two members also reside. ([ECF No. 10](#), ¶¶ 3 & 4, Page ID #46.) Genesis Health Clubs does not have property or facilities in Ohio. (*Id.*, ¶¶ 6–7.) Nor does Genesis Health Clubs "have any contacts with Ohio." (*Id.*, ¶ 5.) Further, it does not have employees in Ohio or that travel to Ohio at any time. (*Id.*, ¶ 8, PageID #47.) And Genesis Health Clubs does not direct advertising at Ohio, solicit business from persons or companies in Ohio, transact any business in Ohio, receive any revenue from customers in Ohio, or maintain an Ohio bank account. (*Id.*, ¶¶ 9–11.) Consequently, Genesis has not paid any taxes in Ohio. (*Id.*, ¶13.)

5

A second declaration, from Genesis Health Clubs' IT director, Richard Thompson, confirms that the parties communicated exclusively using Zoom, email, and other technologies. (ECF No. 11, ¶ 4, PageID #48.) No one from Genesis Health Clubs traveled to Ohio during the audit services SpyGlass performed. (*Id.*, ¶¶ 6 & 9, PageID #48 & #49.) Further, the service providers that SpyGlass contacted—with the authorization of Genesis Health Clubs—have no connection to Ohio. (*Id.*, ¶ 8, PageID #49.)

For SpyGlass, Mike Farrell, a vice president with the company, declares that SpyGlass conducted the audit and communicated with Genesis Health Clubs through phone calls, email exchanges, and Zoom videoconferences from SpyGlass' offices in Ohio. (ECF No. 26-1, ¶¶ 5–8, PageID #184.) Further, Genesis Health Clubs signed a letter of agency authorizing SpyGlass to access its telephone provider records and to act as an authorized point-of-contact on behalf of Genesis Health Clubs from SpyGlass' offices in Ohio. (*Id.*, ¶ 11.) In addition, Genesis Health Clubs provided documents and information to SpyGlass for its review in Ohio. (*Id.*, ¶ 12.) During the parties' relationship, SpyGlass' Ohio-based team acted at the direction of Genesis Health Clubs to implement the recommendations from the Snapshot Audit. (*Id.*, ¶ 20, PageID #186; *id.*, PageID #48–67.) Simply put, SpyGlass performed its services for Genesis Health Clubs in its offices in Ohio. (*Id.*, ¶¶ 5–8, PageID #184.)

## STATEMENT OF THE CASE

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendants move to dismiss on the ground that the Court lacks personal jurisdiction.

6

(ECF No. 24.) In considering a motion to dismiss for lack of personal jurisdiction, a court may: (1) rule on the motion based on affidavits submitted by the parties; (2) permit jurisdictional discovery; or (3) hold an evidentiary hearing to resolve the motion. *See Dean v. Motel 6 Operating LP*, 134 F.3d 1269, 1272 (6th Cir. 1998). Here, Genesis submitted two declarations in support of its motion (ECF No. 10; ECF No. 11), and SpyGlass submitted a declaration opposing (ECF No. 26-1). Based on a review of the parties' respective briefs and declarations, the Court exercises its discretion to decide the motion without an evidentiary hearing based on the largely undisputed record before the Court, including the parties' declarations.

## ANALYSIS

In this procedural posture, the Court considers the pleadings and declarations in the light most favorable to Plaintiff as the non-moving party. *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017); *Dean*, 134 F.3d at 1272 (6th Cir. 1998) (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). Plaintiff "need only make a *prima facie* case of jurisdiction." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). This burden is "relatively slight." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).

Under Rule 12(b)(2), Plaintiff has the burden of establishing jurisdiction over every Defendant. "Personal jurisdiction must be analyzed and established over each defendant independently." *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Here, Plaintiff's allegations and the operative facts are identical for both Defendants. (*See*

*generally* ECF No. 15.)  Therefore, the Court analyzes personal jurisdiction over Defendants together.  *See Architectural Busstrut Corp. v. Smith LC*, No. 2:21-CV-4028, 2022 WL 1837596, at *2 (S.D. Ohio Feb. 8, 2022).

To establish personal jurisdiction over a defendant, the Court must find that (1) the defendant is amenable to service of process under the State's long-arm statute; and (2) the exercise of personal jurisdiction is proper under the federal Due Process Clause.  *Conn*, 667 F.3d at 711.  "Even if a defendant's contact with the State of Ohio satisfies Ohio's long-arm statute, personal jurisdiction fails unless exercising jurisdiction over the defendant comports with traditional notions of fair play and substantial justice."  *J.M. Smucker Co. v. Hormel Food Corp.*, 526 F. Supp. 3d 294, 300 (N.D. Ohio 2021).

"Personal jurisdiction falls into two categories:  general and specific."  *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 501 (6th Cir. 2020) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Here, there is no dispute that Genesis Health Clubs is not subject to general jurisdiction in Ohio; therefore, Plaintiff attempts to establish specific jurisdiction.  (ECF No. 26, PageID #175–82.)

I. **Ohio's Long-Arm Statute**

In April 2021, the Ohio General Assembly extended the State's long-arm statute to the limits of the Constitution.  Previously, the statute authorized the exercise of personal jurisdiction over an out-of-state defendant under one of nine enumerated criteria.  *See* Ohio Rev. Code § 2307.382(A).  For this reason, courts construed the statute as foreclosing the exercise of general jurisdiction over non-

resident defendants. *See Conn*, 667 F.3d at 717. After the amendment, the statute now provides that "a court may exercise personal jurisdiction over a person on any basis consistent with . . . the United States Constitution." Ohio Rev. Code § 2307.382(C). This amended language appears to allow the exercise of general jurisdiction over non-resident defendants where the Constitution permits. *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, 539 F. Supp. 3d 822, 827 n.2 (S.D. Ohio 2021); *see also 3M Co. v. Premium Contractor Sol., LLC*, No. 3:20-CV-443, 2021 WL 3737908, at *4 (S.D. Ohio Aug. 24, 2021). But it does not collapse the specific-jurisdiction analysis into a single due-process inquiry. *Premier Prop. Sales*, 539 F. Supp. 3d at 827 n.2; *but see Mesa Indus., Inc. v. Charter Indus. Supply, Inc.*, No. 1:22-CV-160, 2022 WL 1044720, at *3 n.1 (S.D. Ohio Apr. 7, 2022) ("[T]here is now some question whether a court must separately analyze the jurisdictional exercise under both the long-arm statute *and* the Due Process Clause, or whether these inquiries have merged."). After all, the statute on its face still contains the list of nine enumerated bases for exercising personal jurisdiction over an out-of-state defendant. Because there is no question that Ohio may not exercise general jurisdiction over Genesis Health Clubs, the Court begins its analysis of specific jurisdiction under the State's long-arm statute.

Ohio's long-arm statute confers specific personal jurisdiction over an out-of-state defendant who engages in any of nine enumerated acts that occur "in this state." Ohio Rev. Code § 2307.382(A)(1)–(9). Plaintiff maintains that Genesis Health Clubs transacted business in Ohio within the meaning of Section 2307.382(A)(1)—the only

9

provision of the long-arm statute that might apply on the facts presented. ([ECF No. 26](), PageID #172–74.)  "The Ohio Supreme Court has noted that the word 'transact' means 'to carry on business,' and 'to have dealings,' and it is broader than the word 'contract.'" *Attorney Gen. v. Grand Tobacco*, 171 Ohio App. 3d 551, 2007-Ohio-418, 871 N.E.2d 1255, ¶ 18 (Ohio Ct. App.) (quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75, 559 N.E.2d 477 (1990)).  Because this jurisdictional grant sweeps broadly, the "highly particularized fact situations" to which the statute applies "render[s] any generalization unwarranted." *United States Sprint Commc'ns Co. v. K's Foods*, 68 Ohio St.3d 181, 185, 1994-Ohio-504, 624 N.E.2d 1048 (1994) (quotation omitted).

On the record presented, Genesis Health Clubs transacted business in Ohio within the meaning of the long-arm statute because it had dealings in the State with SpyGlass.  Genesis Health Clubs transacted business in Ohio by agreeing to allow SpyGlass to act on its behalf in negotiating with its service providers, knowing that SpyGlass would perform these services on its behalf from its offices in Ohio, and by using SpyGlass' electronic portal based in Ohio to provide SpyGlass with documents and other information to perform its audit pursuant to the parties' agreement.  Under the broad definition of what constitutes "transacting business" under the statute, *see Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 431 (6th Cir. 2006), these allegations meet the slight burden to make out a *prima facie* case that the Ohio long-arm statute reaches Genesis Health Clubs.

10

"[T]he broad wording of the statute permits jurisdiction over non-resident defendants who are transacting *any* business in Ohio." *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 511 (6th Cir. 2006) (citing *Kentucky Oaks Mall*, 559 N.E.2d at 479, 480) (emphasis added). Accordingly, the Court determines that the "transacting any business prong" of Ohio's long-arm statute in Section 2307.382(A)(1) reaches Genesis Health Club based on the record before the Court.

## II.     Due Process

Specific personal jurisdiction comports with due process under the Constitution where "the defendant has sufficient minimum contacts such that traditional notions of fair play and substantial justice are not offended." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (cleaned up). In making this determination, courts examine whether (1) the defendant purposefully availed itself of the privilege of acting or causing a consequence in the forum State; (2) the cause of action arises from the defendant's activities there; and (3) the defendant's acts or the consequences of those acts have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable. *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)); *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1299 (6th Cir. 1989). Maintenance of the suit as a result of the defendant's contacts with the forum State must also not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945). This standard aims at protecting non-resident defendants from litigating in

a distant and inconvenient forum. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

### II.A.   Purposeful Availment

Purposeful availment means having a substantial connection to the forum State such that the defendant can reasonably anticipate being haled into court there. *Burger King,* 471 U.S. at 472–75 (1985). The plaintiff must demonstrate that the defendant was more than a mere passive defendant, which did not initiate the original transaction and did not direct itself to the forum State. *Friedman v. Speiser, Krause & Madole, P.C.,* 56 Ohio App. 3d 11, 565 N.E.2d 607, 609 (Ohio Ct. App. 1988). Also, the defendant's contact with the forum State must be more than "random, fortuitous, or attenuated" to amount to purposeful availment. *Burger King,* 471 U.S. at 475.

Here, Genesis Health Clubs did not initiate the transaction or the relationship between the parties. Instead, the amended complaint pleads that a representative of SpyGlass contacted Genesis Health Clubs. (ECF No. 15, ¶ 20, PageID #84.) Accordingly, the contacts between Genesis Health Clubs and Ohio are fortuitous. For all Genesis Health Clubs knew or cared, SpyGlass could be located anywhere. Although it transacted business in Ohio by uploading documents and information to the electronic portal based in Ohio that SpyGlass uses and knew that SpyGlass would perform under the parties' contract in Ohio, these random or fortuitous contacts do not amount to purposeful availment.

As Genesis Health Clubs notes (ECF No. 24, PageID #141; *see also* ECF No. 27, PageID #258–60), a defendant does not purposefully avail itself of a forum State

merely by entering into a contract with a company based there or contacting the company by electronic means. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000). As in *Calphalon*, Genesis Health Clubs' contacts with Ohio result from a contract not to market products in Ohio but rather to create economic benefits elsewhere and from SpyGlass' decision to reside in Ohio and perform its work in the State. Under the law of this Circuit, emails, telephone calls, and similar contacts are random, fortuitous, and attenuated and do not constitute purposeful available. *See Kerry Steel, Inc. v. Paragon Indus. Inc.*, 106 F.3d 147, 151 (6th Cir. 1997).

### II.B.   Claims Arising out of In-State Activity

A cause of action arises from a defendant's activities in the forum State where the defendant's contacts with the forum State relate to the operative facts of the dispute. *CompuServe*, 89 F.3d at 1267. Here, SpyGlass brings suit for breach of contract, claiming that Genesis Health Clubs failed to pay for the services SpyGlass performed in Ohio. In this sense, the cause of action arises out of Defendant's contact with the forum. But the actual breach of the contract must have occurred in the State where the plaintiff brings suit. *Calphalon*, 228 F.3d at 724. Where the breach of contract involves the failure to pay, that breach occurs in the State of the breaching party. *Kerry Steel*, 106 F.3d at 152. Therefore, the breach in this case arises out of activity in Kansas, not Ohio.

### II.C.   Reasonableness of Jurisdiction

Finally, there must be a substantial connection between the defendant and the forum State to make the exercise of jurisdiction over the defendant reasonable. *Southern Mach.*, 401 F.2d at 381. Factors to consider in making this determination

13

include: (1) the burden on the defendant to litigate in the State; (2) the interest of the forum State; (3) the plaintiff's interest in obtaining relief; and (4) the interest of other States in securing the most efficient resolution of the dispute. *CompuServ*, 89 F.3d at 1268.

At best, these factors stand in equipoise. SpyGlass has an interest in obtaining relief, and Ohio has an interest in seeing its residents vindicate their contractual right to payment. On the other hand, litigating in Ohio presents something of a burden to Genesis Health Clubs. But protecting a non-resident defendant from litigating in a distant and inconvenient forum tips the balance of these considerations in favor of Defendants. *World-Wide Volkswagen*, 444 U.S. at 292.

\* \* \*

For these reasons, the Court determines that it lacks specific jurisdiction over Genesis Health Clubs. In reaching this conclusion, the Court emphasizes that "personal jurisdiction does not require physical presence in the forum state." *Burnshire Dev.*, 198 F. App'x at 433 n.4 (quoting *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 638 N.E.2d 541, 544 (1994)). But the contacts between Genesis Health Clubs and Ohio are too attenuated, random, and fortuitous to allow the exercise of personal jurisdiction under the traditional analysis courts employ to determine whether the exercise of personal jurisdiction comports with due process.

The authorities on which SpyGlass relies do not change this outcome. SpyGlass points to *Youn v. Track, Inc.*, 324 F.3d 409, 419 (6th Cir. 2003), for the proposition that "a single act may meet the purposeful availment prong." (ECF No. 26, PageID #176.) Fair enough. But in *Youn* the defendant "had five significant

14

contacts with Ohio" such that exercising jurisdiction over defendant was proper. 324 F.3d at 418. The contacts between Genesis Health Clubs and Ohio are far more tenuous.

SpyGlass also directs the Court to *Furth v. Zanic*, No. 1:06 CV 411, 2008 WL 11380195, at *6 (N.D. Ohio Mar. 26, 2008), where the court found that a nonresident defendant had sufficient contacts with Ohio because the plaintiff performed the parties' agreement in Ohio and defendant monitored plaintiff's performance through email and telephone communications. But in that case the defendant affirmatively reached out to the plaintiff to enter into the contract, and the contract called for a "fairly broad obligation with no concrete deadline," which "implie[d] an ongoing relationship." *Id.* at *7. In contrast, SpyGlass solicited business from Genesis Health Clubs. ([ECF No. 15](#), ¶ 20, PageID # 84.) And SpyGlass—not Genesis Health Clubs—sought to have a continuing relationship. (*Id.*, ¶ 44, PageID # 88.); *cf. Tharo Sys., Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 F. App'x 366, 371 (6th Cir. 2006) (concluding that contacts were sufficient where the defendant "affirmatively reached out to [the plaintiff] in Ohio to negotiate the [contract] in an effort to strengthen the parties' mutual business relationship").

## CONCLUSION

For the foregoing reasons, the Court determines that it may not exercise specific jurisdiction over Defendants. Under 28 U.S.C. § 1631, where a court lacks jurisdiction, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been

15

brought at the time it was filed." A district court abuses its discretion where it dismisses an action without determining whether transfer is in the interests of justice. *Jackson v. L&F Martin Landscape*, 421 F. App'x 482, 484 (6th Cir. 2009). Here, the interests of justice support transfer of the action to the District of Kansas where Defendants are subject to jurisdiction ([ECF No. 15](), ¶¶ 5 & 6, PageID #82; [ECF No. 25](), ¶¶ 5 & 6, PageID #148) because Plaintiff alleges breach of contract for unpaid services. Therefore, the Court **ORDERS** the Clerk to **TRANSFER** this action to the District of Kansas.

**SO ORDERED.**

Dated: November 28, 2022

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio